Argued and submitted March 28, reversed and
remanded for new trial September 12, 1984

# STATE OF OREGON,
*Respondent,*

*v.*

# BOBBY LEE CHAMBERS, JR.,
*Appellant.*

## (83-0077; CA A28313)

687 P2d 805

Carla D. Thompson, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a criminal case in which defendant appeals from convictions for burglary and theft in the first degree. He assigns as error, *inter alia,* the trial court's denial of his motion to suppress all statements and physical evidence derived from a police stop of his car. We reverse.

The facts are not particularly in dispute: The Washington County Sheriff's Department had instituted a special program of investigation and patrols in the Oak Hills area because of numerous burglary reports. Officer Bowman was present in the area because of his assignment on this patrol. Bowman's attention was drawn to a car occupied by defendant because of the condition of the car and its location—the car was dirty and "ratty" and did not fit the well-kept, expensive residential area in which it was parked. Bowman parked and observed defendant in the car for a period of several minutes.

Bowman was trained regarding the use of controlled substances, narcotics and dangerous drugs. He observed that defendant, while in the parked car, smoked a cigarette. He then saw defendant "lighting a match and bringing it up toward his face repeatedly." Bowman was familiar with how marijuana and hashish burn when lit in a pipe. He testified that he knew from his experience that it is often hard to keep the contents of a pipe bowl burning when smoking marijuana or hashish and that these substances often require relighting when the smoker wishes "to take another hit on it." Drawing upon his training and experience regarding the use of controlled substances, narcotics and dangerous drugs, Bowman concluded that defendant was lighting a pipe with the matches and smoking marijuana or hashish. His suspicion was a primary reason for the subsequent stop of the car.

Bowman explained his reasons for the stop this way:

"QUESTION: Why did you want to stop it [defendant's car]?

"ANSWER: Mainly because of the suspicious activity of the individual that was sitting in the car.

"QUESTION: What suspicious activity?

"ANSWER: Well, I suspected that he was smoking dope and secondly, the fact that the car was sitting in that residential area and it didn't fit the area as far as being in the ratty,

dirty condition, and it was parked in a very peculiar, suspicious spot."

Bowman had also observed other objective facts, on which the state relies, before he stopped defendant. Foremost among these was a "jogger" who came near defendant's car during the time, repeatedly running a couple of steps, then walking several steps, until he looked directly at the police officer. He then halted completely for 10 to 15 seconds, suddenly ran quickly to a point directly in front of defendant's car, hesitated there and then ran on southbound down the street.

Defendant then immediately pulled away in his car and also headed south down the same street. Bowman followed defendant's car and stopped it when it pulled into a cul de sac. Bowman then approached defendant, identified himself and asked for identification. At this point, he noticed the smell of burned marijuana. During this initial conversation with defendant, he also observed, in plain sight sitting on the floorboard area of defendant's car, a waterpipe. He recognized that the waterpipe was the type used for smoking marijuana and hashish. Bowman then instructed defendant to get out of his car, told him that he was going to search him for weapons and narcotics and proceeded to pat him down. Defendant told Bowman that he had additional marijuana in his right jacket pocket.

A second police officer, Duncan, had arrived by this time. After Bowman finished searching defendant, he searched the passenger area of the car for additional narcotics. He found another pipe in the passenger area.

Duncan then spoke with defendant about the trunk of his car. Defendant stated that the officers were free to search the trunk but that he did not have a key for it. In his search of the passenger area, Bowman had observed a key wedged between the backrest and the seat. He retrieved that key and took it back to the trunk area where defendant and Duncan were standing. Directly in front of defendant, Bowman inserted the key and opened the trunk.

When the trunk was opened, the officers saw three pillow cases, knotted at the top, with contents inside. Bowman asked defendant if he minded the officers opening up the

pillow cases. Defendant responded that he did not mind and that he, too, would like to see what was in them. Bowman then opened one. Its contents included a number of prescription bottles with the name "Ronning" on them. That caused Bowman to suspect that defendant had been involved in a burglary, and he then read him *Miranda* warnings. Defendant indicated that he understood his rights and also that he wished to continue talking to the officers without counsel being present. The officers made no threats or promises, and defendant did not appear to be under the influence of marijuana, alcohol, or other drugs to such an extent that he was not aware of his rights or the nature of his waiver of those rights.

While the officers were engaged in further conversation with defendant, they received radio confirmation that there had been a break-in at the Ronning residence, located in the Oak Hills residential area not far from where defendant's car was stopped. The other two pillow cases in the trunk of the car were subsequently taken to the Sheriff's office and opened there. A chainsaw was also found in the trunk of the car when it was stopped, and there was a cowboy hat in the passenger area. All of the items, including the contents of the pillow cases, were seized and later determined to be articles stolen from the Ronning residence.

■     A police officer has authority to stop and interrogate a person if the officer "reasonably suspects" that a person has committed a crime. Such a stop and inquiry is authorized by statute. ORS 131.615 provides:

> "(1)   A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

The term "reasonably suspects" is defined by ORS 131.605(4):

> "(4)   'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

■ ■     This entire case hinges—as the parties recognize—on the legality of the stop. If it was proper, so was all that followed; if it was not, all else falls. In making this key determination, we look to the objective facts known to the officer at the time of the stop. *State v. Valdez*, 277 Or 621, 561

P2d 1006 (1977). Of course, the significance of any of the facts may be enhanced by the officer's special knowledge of the way certain crimes, such as those involving narcotics, are committed or of the criminal history of the particular person. *See State v. Green,* 67 Or App 70, 676 P2d 938, *rev den* 297 Or 82 (1984).

The state argues, alternatively, that Bowman reasonably suspected either that defendant was committing the crime of illegal possession of a controlled substance or, as an accomplice, the crime of burglary. We consider these crimes in reverse order.

■■    There is no objective basis to believe defendant was committing a burglary. Certainly, being where he was in a "ratty" car can play no role. *See State v. Valdez, supra,* 277 Or at 628. Neither does the activity of the jogger, while curious, justify a reasonable belief that a crime has been committed. It follows that the stop cannot be justified on this ground.

■■    The question of whether Bowman reasonably suspected defendant was illegally smoking hashish is closer, but the answer is the same. In essence, all Bowman could point to was the fact that defendant kept relighting what the officer thought was a pipe. The officer could not even see the pipe, much less what was in it. With due respect to the officer's expertise, we note that trouble lighting a pipe (or keeping it lit) appears to be the lot of all those who essay to smoke those devices.[1] We are not prepared to assert that, under ORS 131.615(1), pipesmokers in automobiles are subject to being stopped solely on the ground that they cannot keep their pipes lit. The trial court erred in denying defendant's motion to suppress.

Reversed and remanded for a new trial.

---

[1] Including one member of this court, whose pipe seems to be in perpetual peril of going out.