**PROVO CITY CORPORATION, Plaintiff and Appellee,**

v.

**Bradley SPOTTS, Defendant and Appellant.**

**No. 920202–CA.**

Court of Appeals of Utah.

Oct. 7, 1993.

Thomas H. Means, Provo, for defendant and appellant.

Vernon F. (Rick) Romney, Provo, for plaintiff and appellee.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

Defendant appeals his conviction for possession of a controlled substance, a class B misdemeanor, in violation of what is now Utah Code Ann. § 58–37–8(2)(a)(i) (Supp. 1993). Defendant's primary contention is that the investigatory stop, which culminated in his arrest, was unlawful. We affirm.

## FACTS

On the afternoon of September 28, 1991, Officer Ingrid Weinmuller, a Provo City police officer, was assigned traffic control duty following a university football game. While waiting for the game to end, she monitored traffic from her private, unmarked vehicle. Her automobile was stationed in an empty parking lot facing east. Officer Weinmuller was attired in her police uniform.

At approximately 3:30 p.m., a red truck carrying two males pulled into the parking lot and stopped directly in front of Officer Weinmuller's vehicle. The truck was situated approximately ten feet from Officer Weinmuller and faced north. Despite being a rather warm day, the windows of the truck were rolled up. The officer saw the driver taking some "hits" from a small cigarette which appeared to her to be a "joint." The officer could see that the cigarette was smaller than a manufactured cigarette and that it had the distinctive shape of a joint. Officer Weinmuller saw the orange glow of the cigarette as defendant, the driver, inhaled, and she could see the paper quickly disintegrate in a manner which her experience [1] told her was typical of marijuana cigarettes.

Officer Weinmuller then exited her vehicle and, with an outstretched hand, stopped the defendant as he started to drive away. She observed that he looked surprised as he saw her in uniform. Defendant opened the door and Officer Weinmuller immediately smelled the odor of marijuana emanating from defendant while she saw him exhale smoke from his mouth. She was approximately three feet from defendant at this point. The officer then asked defendant to exit his vehicle. Officer Weinmul-

---

**1.** This experience consisted of POST academy training and exposure to marijuana use during high school.

ler testified that defendant's speech was slow and his eyes were very bloodshot.

During the stop, Officer Weinmuller asked defendant where he had put the marijuana cigarette she had seen him smoking and he replied that he had given it to his friend who had exited the vehicle earlier. She then asked how many hits he had taken and he admitted to having taken "a few." Finally, she told defendant that it was illegal to operate a vehicle while impaired by marijuana, and he replied that he would not be driving if "it" was going to affect his driving.

Defendant was then placed under arrest. A consent search of defendant's vehicle revealed neither the remnant of the joint nor any controlled substance.

At trial, which was to the court sitting without a jury, Officer Weinmuller testified to the facts set forth above. Defendant did not testify, except as to an ancillary matter. *See* note 3. On cross-examination, the officer admitted she did not know whether a hand-rolled tobacco cigarette would burn in a way significantly different from a marijuana joint. The officer also had understandable difficulty explaining in verbal terms the specific differences between the smell of tobacco and the smell of marijuana, but on redirect stated that she did know, and could readily discern in practice, the difference between the two aromas.

Defendant raises three arguments on appeal: (1) the police stop was not based on reasonable and articulable suspicion; (2) pre-arrest statements were erroneously admitted in violation of the corpus delicti rule; and (3) the evidence was insufficient to support the ultimate verdict.

## REASONABLE SUSPICION

### A. Standard of Review

As was recently pointed out in *State v. White*, 856 P.2d 656 (Utah App.1993), "[w]hether reasonable suspicion exists in investigative detentions" has been previously characterized as posing a question of fact reviewable only for clear error. *Id.* at 659. *See State v. Mendoza*, 748 P.2d 181, 183 (Utah 1987). However, the logic of *State v. Thurman*, 846 P.2d 1256, 1268–69, 1271 (Utah 1993), although offered in a case involving consent to search rather than the reasonableness of suspicion, suggests that only the findings of underlying historical fact would be reviewed for clear error, while the conclusion that such facts establish a reasonable, articulable suspicion would be reviewed for correctness. *See White*, 856 P.2d at 659.

As in *White*, "[t]he result in this case ... is the same under either standard of review," *id.*, making any further discussion of which standard we should employ quite unnecessary to our decision. We follow the *White* panel's lead in refraining from an examination, in dicta, of which standard of review "really" applies.

### B. Analysis

■ A non-consensual investigative stop is constitutional when it meets the two-prong analysis enunciated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). That analysis focuses on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified" the stop. 392 U.S. at 20, 88 S.Ct. at 1879. Defendant challenges only the first prong, which is satisfied if the police officer can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21, 88 S.Ct. at 1880.[2]

Defendant argues that, prior to the stop, Officer Weinmuller observed no activity inconsistent with innocent behavior and that this court has been reluctant to find reasonable suspicion under such circumstances. Defendant contends his conduct

---

**2.** The *Terry* doctrine has been codified in Utah. The applicable statute, Utah Code Ann. § 77–7–15 (1990), states:

A peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions.

was just as consistent with that of an individual smoking a hand-rolled tobacco cigarette. To support this argument he cites several Utah cases for the proposition that nervous behavior, when one is confronted by a police officer, does not give rise to a reasonable suspicion of criminal activity. *E.g., State v. Sery,* 758 P.2d 935 (Utah 1988); *State v. Mendoza,* 748 P.2d 181 (Utah 1987); *State v. Godina–Luna,* 826 P.2d 652 (Utah App.1992).

■ We cannot agree with defendant's argument. While we have recognized that nervous behavior does not give rise to reasonable suspicion, it does not follow, nor have we held, that the mere fact that there might be an innocent explanation for conduct wholly vitiates reasonable suspicion. To the contrary, where a defendant's conduct is "conceivably consistent with innocent ... activity," but is also "strongly indicative" of criminal activity, we will not hesitate to conclude that reasonable suspicion exists. *State v. Menke,* 787 P.2d 537, 541 (Utah App.1990).

■ The parties do not dispute the basic facts as established in Officer Weinmuller's testimony.[3] The trial court had no evidentiary disputes to resolve and its "findings" are simply an amplification of Officer Weinmuller's testimony. In our view, the facts related by Officer Weinmuller meet the reasonable suspicion test.

The key circumstances were as follows: 1) defendant smoked a small (one-half inch) rolled cigarette which the officer recognized as a "joint"; 2) the cigarette "disintegrated rapidly" as it burned, consistent with what the officer's training and experience indicated was typical of a marijuana cigarette; 3) the officer, in light of her training and experience, characterized de-

fendant's method of inhalation as taking "hits"; 4) these events took place in a vacant parking lot onto which defendant had driven his vehicle from a public street; 5) the vehicle's windows were rolled up on a warm day; and 6) the officer had a close, unobstructed view of defendant's actions.

The trial court is required to consider the "totality of the circumstances confronting the officer at the time of the seizure." *State v. Sierra,* 754 P.2d 972, 975 (Utah App.1988). Any one of the facts recited above, standing alone, would likely not support a determination of reasonable suspicion. However, taken together they describe rather unique hallmarks of marijuana usage. Officer Weinmuller specifically described defendant's smoking as taking hits. "Hits" becomes something of a term of art under these circumstances, describing the distinctive method of smoking marijuana, characterized by deep inhalation followed by long retention in the lungs. Similarly, Officer Weinmuller specifically termed the burning item a "joint," meaning the distinctive size and shape of a typical hand-rolled marijuana cigarette. It is entirely reasonable, given the comparatively small number of tobacco smokers in contemporary urban society who "roll their own," that the thought would never have occurred to Officer Weinmuller, prior to cross-examination, that the item might be something other than a marijuana cigarette.

Given Officer Weinmuller's uncontroverted testimony, we conclude that although defendant's activity was conceivably consistent with innocent activity, it was strongly indicative of criminal activity and the officer had reasonable suspicion to stop the vehicle and investigate further.[4]

---

**3.** Defendant testified briefly, but only on the narrow issue of whether he was seized when his vehicle was stopped. That issue is not before us in view of the City's concession that the stop was a seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

**4.** Defendant argues that *State v. Chambers,* 69 Or.App. 681, 687 P.2d 805 (Or.App.1984), supports the proposition that conduct consistent with innocent behavior does not give rise to reasonable suspicion. We do not follow that

decision, which concerned the observation of an individual in a car bringing a match to his face several times and from which the police officer surmised the individual was lighting a pipe and smoking marijuana or hashish. First, the facts are substantially different. The testimony of the officer in that case was not nearly as detailed as that of Officer Weinmuller. The officer in *Chambers* could not even see whether defendant in fact held a pipe in his mouth. This situation is different from that involving Officer

## ADMISSIBILITY OF ADMISSIONS UNDER CORPUS DELICTI RULE

■ "[B]efore a defendant's inculpatory statements can be introduced as evidence against defendant, the [prosecution] must prove the occurrence of a crime, i.e., a corpus delicti." *State v. Johnson*, 821 P.2d 1150, 1162 (Utah 1992). To satisfy the rule, the prosecution must "show by clear and convincing evidence that (i) a wrong was done and (ii) such wrong was the result of criminal conduct." *Id.* at 1164. The modern view is that this may be accomplished either by direct or circumstantial evidence. Charles E. Torcia, Wharton's Criminal Law § 28 at 150 (14th ed. 1978). "The purpose of the rule [is] to safeguard against convicting the innocent on the strength of false confessions."[5] *State v. Weldon*, 314 P.2d 353, 354 (Utah 1957).

Defendant argues that because the City did not offer or produce direct evidence on the identity of the substance he was alleged to have possessed, the City failed to meet its burden under the corpus delicti rule. Defendant asserts that, without his statements, the prosecution was unable to establish, by clear and convincing evidence, that he possessed an identifiable amount of marijuana. Thus, his admissions[6] should not have been received into evidence.

The Utah statute under which defendant was charged makes it unlawful "for any person knowingly and intentionally to possess or use a controlled substance." Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1993). Marijuana is a controlled substance, *id.* § 58–37–4(2)(a)(iii), and inhalation of a controlled substance constitutes use or possession. *Id.* § 58–37–2(27). Therefore, to establish the corpus delicti for unlawful use of marijuana, where inhalation is the gravamen of the charge, the City must show that (1) marijuana was inhaled and (2) the inhalation was accomplished knowingly and intentionally.

■ Defendant argues that his statements were admitted "with absolutely no direct evidence" on the identity of the substance he was alleged to possess. We disagree. While no marijuana was introduced, the sum total of the evidence was sufficient. The officer observed defendant's windows were rolled up and he was taking "hits" from a small rolled cigarette. The cigarette was burning rapidly and in conformity with what experience told the officer was a marijuana joint. The officer then stopped the vehicle and while defen-

Weinmuller, who was ten feet away in broad daylight and could readily see the defendant and his behavior. Second, we agree with the City that *Chambers* seems to have been erroneously based on the premise that conduct which might conceivably be innocent cannot give rise to reasonable suspicion, when instead the focus should be on the likelihood, as a practical matter, of the non-criminal explanation.

A case much closer to the instant one factually is *People v. Clark*, 185 Ill.App.3d 231, 133 Ill.Dec. 362, 541 N.E.2d 199 (1989), where the arresting officer, during daylight hours and from a distance of approximately ten feet, observed a hand-rolled cigarette being passed among the occupants of an automobile who "inhaled and delayed in exhaling." *Id.* 133 Ill. Dec. at 367, 541 N.E.2d at 204. The trial court, noting the officer was not in a position to smell what was being smoked, suppressed the evidence found in the ensuing search of the vehicle. *Id.* 133 Ill.Dec. at 364, 541 N.E.2d at 201. The appellate court disagreed: "The fact that the cigarette was hand-rolled, that the occupants passed it back and forth, and that they inhaled and delayed in exhaling provides a reasonable inference that the occupants of the vehicle were smoking marijuana." *Id.* 133 Ill.Dec. at 367, 541 N.E.2d at 204. *See also Lewis v. State*, 518 So.2d 214, 218 (Ala.Crim.App.1987) (passing cigarette "in manner common to marijuana use" and other furtive gestures constituted probable cause); *State v. Arnot*, 724 S.W.2d 676, 678 (Mo.App.1987) (passing and smoking hand-rolled cigarette in style typical of marijuana use constituted probable cause).

5. Traditionally, the rule concerned only after-the-fact confessions, but is now applicable to admissions generally. *Johnson*, 821 P.2d at 1162 & n. 7.

6. Officer Weinmuller testified: "Well, yeah, I was talking with him, I was asking where the cigarette was, where the marijuana cigarette was." She explained that defendant "said he gave it to his friend." Weinmuller further testified, "I asked him how many hits he had off it, he said a few. I told him that it was illegal to possess marijuana and to operate a vehicle while impaired by marijuana, and he said ['Do you think I would be driving if it was going to effect my driving[?']"

dant opened the door he exhaled smoke from his mouth. Coinciding immediately with seeing the exhaled smoke, the officer smelled the odor of marijuana emanate from defendant's mouth. As the defendant got out of his truck, the officer noticed his eyes were very bloodshot.

With these facts, the City was able to demonstrate, by clear and convincing evidence, that a wrong was done and that such wrong was the result of criminal conduct. Thus, in light of the fact that there was both visual and olfactory identification by an experienced officer, the corpus delicti for the crime of possession of a controlled substance was established and it was not error to admit testimony concerning defendant's inculpatory admissions.

## SUFFICIENCY OF THE EVIDENCE

■ In reviewing a challenge to the sufficiency of the evidence in a bench trial, we review the evidence to see whether the verdict is "clearly erroneous." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).

Defendant argues that the City failed to produce direct evidence of the substance allegedly possessed or a chemical analysis thereof, and thus should be required to meet the six factor test in *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir.1976), or some similarly strict standard. The City responds that direct evidence was supplied or, in the alternative, that the evidence produced was sufficient under a *Dolan*-type test.

Because courts treat sufficiency of the evidence questions in drug cases where neither the substance nor expert chemical analysis is provided under the rubric of circumstantial evidence, we shall follow suit without endorsing the conceptual integrity of the analysis.[7] *See, e.g., United States v. Baggett*, 890 F.2d 1095, 1096–97 (10th Cir.1989); *Dolan*, 544 F.2d at 1221;

*United States v. Gregorio*, 497 F.2d 1253, 1263 (4th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974).

*Dolan* held that lay testimony and circumstantial evidence may be sufficient, without introduction of expert chemical analysis, to establish the identity of a substance involved in a narcotics transaction. 544 F.2d at 1221. The *Dolan* court stated that relevant circumstantial proof *may* include: 1) "evidence of the physical appearance of the substance involved in the transaction"; 2) proof that the substance "produced the expected effects when sampled by someone familiar with the illicit drug"; 3) "evidence that the substance was used in the same manner as the illicit drug"; 4) "testimony that a high price was paid in cash for the substance"; 5) "evidence that transactions involving the substance were carried on with secrecy or deviousness"; and 6) evidence that defendant called the substance by name or others did so in the defendant's presence. *Id.*

■ These factors were apparently not intended as an exhaustive list, but rather as examples of the kind of evidence which could be used to prove, beyond a reasonable doubt, the existence of a controlled substance in the absence of physical evidence. The *Dolan* court did not require proof of all six factors for each of the counts against Dolan, nor would we require proof of every factor against defendant. However, the City provided evidence which clearly falls within the third *Dolan* factor, and the City provided additional proof which would arguably fall under slight variants of factors one, two, five, and six. Certainly there was evidence that the substance was used in the same manner as an illicit drug. In addition, the officer testified as to the appearance of the substance, at least in terms of seeing a "joint," and to smelling the substance's distinctive aroma. She also testified that the defendant's

7. We note that the question of whether evidence is direct or circumstantial is the subject of some confusion in the reported cases, in a manner which must be unsettling to evidence professors. In *Dolan*, for example, the court stated that "circumstantial proof" includes evidence "that the substance produced the expected ef-

fects when sampled." 544 F.2d at 1221. However, the court in *United States v. Sanchez DeFundora*, 893 F.2d 1173 (10th Cir.), *cert. denied*, 495 U.S. 939, 110 S.Ct. 2190, 109 L.Ed.2d 518 (1990), characterized a witness's testimony as to how the alleged drug "affected" her as "direct evidence." *Id.* at 1176.

physical appearance and behavior, i.e., bloodshot eyes and slow speech, were in conformity with those of one under the influence of marijuana. The officer's testimony suggests that the incident was carried out with some degree of secrecy. Finally, when the officer referred to the substance by name, the defendant responded without denying her characterization, but instead acknowledged he had taken a few "hits." Thus, we agree with the City that the evidence was sufficient even under the *Dolan* analysis to support the conviction.

We note, however, that this case approaches the outer limit of what we would affirm for a possession case where the substance itself or chemical test data was not produced. We emphasize that this case involved not only the substance's smell, but also simultaneous observation of the smoke exiting defendant's mouth and prior observation of the act of taking "hits" from a "joint." Also, defendant made several inculpatory statements and Officer Weinmuller was able to observe the defendant's physical characteristics, aspects of which were consistent with those of a person affected by marijuana.

Having fully considered the evidence and resulting inferences, we are not persuaded that the verdict is clearly erroneous.

## CONCLUSION

There was a valid basis to stop defendant's car and investigate the suspicion of marijuana use. Introduction of defendant's inculpatory admissions did not offend the corpus delicti rule. The evidence introduced at trial is sufficient to sustain defendant's conviction. Accordingly, the judgment appealed from is affirmed.

BILLINGS, J., concurs.

BENCH, J., concurs in result.