**STATE of Utah, Plaintiff and Appellee,**

v.

**Scott Alan DELANEY, Defendant and Appellant.**

**No. 920815–CA.**

Court of Appeals of Utah.

Feb. 2, 1994.

Michael D. Esplin (argued), Aldrich, Nelson, Weight & Esplin, Provo, for defendant and appellant.

Jan Graham, State Atty. Gen., Todd A. Utzinger (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff-appellee.

Before BILLINGS, GREENWOOD and DAVIS, JJ.

## OPINION

DAVIS, Judge:

Appellant Scott Alan Delaney appeals from a conviction for possession of a controlled substance with intent to distribute, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv) (Supp.1993). We affirm.

### I. PROCEDURAL HISTORY

Delaney was arrested for possessing cocaine with intent to distribute after his vehicle was stopped for exceeding the speed limit. Delaney filed a motion to suppress the evidence seized following the search of his vehicle and arrest. After conducting an evidentiary hearing, the trial court denied the motion. The matter then proceeded to a bench trial, at which Delaney was found guilty as charged. On appeal, Delaney challenges both the factual and legal sufficiency of the trial court's denial of his motion to suppress.

### II. FACTS

The facts recited below were taken from the transcript of the hearing on the motion to suppress, and are recited in a light most favorable to the trial court's findings. *See Ong Int'l, Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 449 (Utah 1993). On May 14, 1991, Sergeant Mangelson of the Utah Highway Patrol stopped a vehicle on Interstate 15 near Nephi, Utah for travelling seventy-one miles per hour in a sixty-five mile per hour zone. Mangelson verified the vehicle speed on a mounted radar unit in his patrol car. Delaney was a passenger in the vehicle, which was being driven by Michael Lovegren.[1] The car was registered to Delaney. Mangelson approached the vehicle on the driver's side and requested a license and registration.

As he was collecting this information, Mangelson detected the strong odor of burnt marijuana emanating from the vehicle. He then asked the two men if they had any contraband such as guns, drugs, or alcohol in the vehicle. Delaney responded that they had some beer, but that it was in the trunk. The officer then asked if he could look through the vehicle, to which Delaney responded, "Do you want to look in the trunk?" Mangelson stated that he wished to search the trunk and the interior. Although apprehensive, both occupants consented to a search.

Next, Mangelson asked the men to exit the vehicle and conducted a search. He found a cellophane bag containing marijuana on the passenger side just inside the door and a small bindle of cocaine under a pleat on the front seat near the driver's side. He then arrested the two men. Upon continuing the search, Mangelson discovered more cocaine,

---

1. All charges against Lovegren were dismissed and he is not a party to this appeal.

another container of marijuana, and drug paraphernalia in a duffle bag belonging to Delaney.

On appeal, Delaney claims: (1) the stop was an illegal pretext stop; (2) his detention at the scene was unreasonable; and (3) he did not voluntarily consent to the search of his vehicle.

### III. PRETEXT TRAFFIC STOP

In *State v. Sierra*, 754 P.2d 972, 977 (Utah App.1988), this court acknowledged that the Fourth Amendment of the United States Constitution prohibits "pretext stops." As we stated in *State v. Lopez*, 831 P.2d 1040 (Utah App.), *cert. granted*, 843 P.2d 1042 (Utah 1992):

> In Utah, the pretext doctrine applies in cases where an officer claims to have stopped a vehicle for a minor traffic violation, but where the court determines the stop was not made because of the traffic violation but rather due to an unconstitutional motivation and, therefore, the officer has deviated from the normal course of action expected of a reasonable officer.

*Id.* at 1044 (citing *Sierra*, 754 P.2d at 978).

■ When a pretext stop is alleged at a suppression hearing, the State has the initial burden of showing that a warrantless traffic stop is lawful. *Id.* 831 P.2d at 1049. In other words, the State must show that a traffic violation occurred in the officer's presence [2] or that the officer had probable cause or a reasonable suspicion to believe that a violation of the law occurred. *Lopez*, 831 P.2d at 1043, 1049. "Once the State makes

this showing, the defendant must point to some evidence to support the defendant's claim that the stop was a pretext stop." *Id.* If the defendant adequately raises the pretext issue, the State must show that "a reasonable officer would have made the stop absent the alleged illegal motivation." *Id.*; *accord State v. Harmon*, 854 P.2d 1037, 1039 (Utah App.1993); *Sierra*, 754 P.2d at 978.

Here, the trial court concluded that the stop of Delaney's vehicle was "a constitutionally valid stop based upon reasonable suspicion of speeding." Specifically, the court found that Delaney's vehicle was travelling seventy-one miles per hour in a sixty-five mile per hour zone, and that Mangelson validly measured the speed by means of stationary radar.

■ Delaney claims that the trial court's findings on the legality of the stop are clearly erroneous.[3] In support of this allegation, Delaney points to Lovegren's testimony that he was travelling a legal sixty miles per hour when he passed Mangelson's stationary patrol car. Delaney also notes his and Lovegren's testimony that the radar detector they had with them did not go off as they passed Mangelson.

If accepted by the trial court, this evidence could discredit Mangelson's testimony concerning the legality of the stop. However, from the trial court's findings it is clear that the court rejected Delaney's and Lovegren's testimony in favor of the arresting officer. The trial court, as fact finder, is in the best position to weigh the evidence and assess witness credibility. *Harmon*, 854 P.2d at

2. This court has held that a police officer may stop an automobile for a traffic violation committed in the officer's presence. *Sierra*, 754 P.2d at 977. Arrest "for any public offense committed or attempted in the presence of any peace officer" is also authorized under Utah Code Ann. § 77-7-2(1) (1990).

3. Some inconsistency exists concerning the appropriate standard of review for determining the existence of reasonable suspicion to stop a vehicle. As we noted recently in *Provo City Corp. v. Spotts*, 861 P.2d 437 (Utah App.1993), " '[w]hether reasonable suspicion exists in investigative detentions' has been previously characterized as posing a question of fact reviewable only for

clear error." *Id.* 861 P.2d 437 (quoting *State v. White*, 856 P.2d 656, 659 (Utah App.1993)). However, we have also acknowledged the two-step analysis for suppression hearings articulated in *State v. Thurman*, 846 P.2d 1256, 1268–71 & n. 11 (Utah 1993), in which a clearly erroneous standard is used to review underlying factual findings and a correctness standard is used to review the trial court's ultimate determination. *See Provo City*, 861 P.2d at 439–440; *White*, 856 P.2d at 659. Finally, in *State v. Potter*, 863 P.2d 40, 41–42 n. 2 (Utah App.1993), we stated, "we are persuaded that [Thurman] compels the adoption of a bifurcated approach where we review the ultimate determination of reasonable suspicion for error." The rationale set forth in *Thurman* therefore controls here.

1040 n. 4; *State v. Garrett,* 849 P.2d 578, 582 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993). Competent evidence exists in the record to support the trial court's findings. Therefore, we will not disturb them on appeal.

Because the State has met its initial burden of showing reasonable suspicion to stop Delaney's vehicle, Delaney must point to some evidence indicating that the stop was pretextual. Delaney offers no such evidence and instead asserts that the State has the burden of proving that the stop was made for a purpose other than to search for drugs. As we discussed above, this claim misreads *Lopez. See Lopez,* 831 P.2d at 1049.

Even if Delaney did offer some evidence to suggest that the stop was an unconstitutional pretext, the record supports our conclusion that a reasonable officer would have stopped Delaney for travelling six miles over the speed limit on an interstate highway. Mangelson testified that he routinely stops vehicles travelling over seventy miles per hour. Nothing indicates that the stop here was outside normal practice. *See id.* (State may meet its burden of showing objective reasonableness of stop by introducing evidence of officer's normal practices). In short, the trial court's findings regarding the legality of the investigative traffic stop are firmly supported by the evidence. We therefore affirm the trial court's determination that the stop was not an unconstitutional pretext.[4]

## IV. AUTHORITY TO DETAIN

Delaney next claims that Mangelson exceeded his authority in detaining Delaney beyond the initial stop for a traffic violation. Specifically, he asserts that the smell of burnt marijuana was not enough to justify his continued detention after the initial traffic stop.

■ When a police officer has lawfully stopped a vehicle for a traffic violation, the officer may briefly detain the vehicle and its occupants in order to examine the vehicle registration and the driver's license. *State v. Castner,* 825 P.2d 699, 703 (Utah App.1992) (citing *State v. Schlosser,* 774 P.2d 1132, 1135 (Utah 1989)). However,

Once the reasons for the initial stop have been satisfied, the individual must be allowed to proceed on his or her way. "Any further temporary detention for investigative questioning after the fulfillment of the purpose for the initial traffic stop is justified under the fourth amendment only if the detaining officer has a reasonable suspicion of serious criminal activity."

*State v. Godina-Luna,* 826 P.2d 652, 654–55 (Utah App.1992) (quoting *State v. Robinson,* 797 P.2d 431, 435 (Utah App.1990)). We must determine if, in this case, Mangelson had a "reasonable articulable suspicion of criminal activity justifying further detention" of Delaney. *Id.* 826 P.2d at 655.

■ In its findings of fact, the trial court specifically found that Mangelson smelled burnt marijuana when he approached the car.[5] Mangelson's detection of the odor of burnt marijuana is enough to create a reasonable articulable suspicion of criminal activity that justified further detention. *State v. Naisbitt,* 827 P.2d 969, 972–73 (Utah App. 1992) (officer's detection of odor of marijuana in vehicle during stop justified warrantless search); *State v. Dudley,* 847 P.2d 424, 426 (Utah App.1993) (trooper had probable cause to search vehicle when he smelled the odor of burnt marijuana at time of stop). Hence, the officer's investigative detention after the initial traffic stop was not unlawful.[6]

---

4. Delaney claims that the trial court did not address his claim that the stop was illegal. However, the trial court's first conclusion of law specifically states that the stop "was a constitutionally valid stop based upon reasonable suspicion of speeding." Thus, the trial court did indeed address the legality of the stop.

5. Delaney does not challenge this finding on appeal.

6. Delaney correctly notes that the trial court did not address the validity of the detention in its

written conclusions of law. However, the record and the trial court's findings of fact support our conclusion that the detention was lawful. *See State v. Archuleta,* 850 P.2d 1232, 1240 n. 18 (Utah), *cert. denied,* — U.S. ——, 114 S.Ct. 476, 126 L.Ed.2d 427 (1993) (when trial court's findings and conclusions are unclear, appellate court may search record for grounds on which they may be upheld); *see also State v. Ramirez,* 817 P.2d 774, 787 n. 6 (Utah 1991) (appellate court will uphold trial court even if it failed to make

## V. CONSENT TO SEARCH

Delaney next challenges the trial court's determination that he actually consented to the search of his vehicle. Alternatively, Delaney claims that if we determine he did in fact consent to the search, that he did not do so voluntarily.

The trial court's factual determination that Delaney actually consented to the search of his vehicle will not be set aside unless it is clearly erroneous. *State v. Keitz,* 856 P.2d 685, 691 (Utah App.1993) (citing *State v. Thurman,* 846 P.2d 1256, 1272 (Utah 1993)). In support of his claim that the trial court's finding is clearly erroneous, Delaney merely notes that at the suppression hearing, he and Lovegren testified that they did not consent to the search of the vehicle. In contrast, Mangelson testified that both men did consent to a search. Again, "it is the prerogative of the trial court to evaluate the evidence and choose what testimony to believe." *State v. Harmon,* 854 P.2d 1037, 1040 n. 1 (Utah App.1993). Obviously, the trial court was more persuaded by Mangelson's testimony. Because nothing in the record indicates that the trial court's finding reaches the level of clear error, we affirm it on appeal.

Having determined that the trial court did not err when it found that Delaney consented to a search of his vehicle, we now consider whether that consent was voluntary. "We review the trial court's ultimate conclusion that consent was voluntary under a correctness standard. The trial court's underlying factual findings will not be set aside unless they are clearly erroneous." *Keitz,* 856 P.2d at 691 (citing *Thurman,* 846 P.2d at 1272).

Whether consent to search was given voluntarily is determined from the totality of the circumstances, including the "characteristics of the accused and the details of the police conduct." *Harmon,* 854 P.2d at 1040; *accord Thurman,* 846 P.2d at 1263. Factors that may show a lack of duress or coercion on the part of the police include:

"(1) the absence of a claim of authority to search by the officers; (2) the absence of an exhibition of force by the officers; (3) a mere request to search; (4) cooperation by the owner [of the automobile]; and (5) the absence of deception or trick on the part of the officer."

*Keitz,* 856 P.2d at 691 (quoting *State v. Whittenback,* 621 P.2d 103, 106 (Utah 1980)).

In its findings of fact and conclusions of law, the trial court stated that the search was the result of valid consent given without duress. Delaney points to several circumstances that he believes indicate that his consent was involuntary: (1) Mangelson had written consent forms in his patrol car but did not use them; (2) Delaney was not informed that he could refuse a search; and (3) Mangelson testified at the suppression hearing that he would have searched the vehicle even if Delaney did not give his consent.

The circumstances cited by Delaney do not support the conclusion that the search was the result of coercion or duress. The law does not require that consent be written. Moreover, the State does not have to prove that Delaney knew of his right to refuse to consent in order to show voluntariness. *See id.; State v. Carter,* 812 P.2d 460, 468 (Utah App.1991), *cert. denied,* 836 P.2d 1383 (Utah 1992). Finally, although Mangelson testified at the suppression hearing that he probably would have searched the vehicle even without Delaney's consent, there was no evidence that Mangelson communicated that fact to Delaney or Lovegren. Besides, as discussed above, Mangelson's belief that he had probable cause to search the vehicle without consent due to the smell of burnt marijuana is supported by Utah case law. *State v. Dudley,* 847 P.2d 424, 426 (Utah App.1993).

In sum, Delaney has not shown that the trial court's findings concerning the voluntariness of the consent are clearly erroneous, or that the court's ultimate conclusion that consent was given voluntarily is incorrect.

Finally, Delaney claims that the trial court erred by not articulating the burden of proof it used to determine the issue of consent. He asserts that a clear and convincing standard, rather than a preponderance of the

findings whenever it is reasonable to assume that

such findings actually were made below).

evidence standard, should be used at suppression hearings.

In *Carter*, 812 P.2d at 467 n. 7, we noted that the burden of proof needed to establish voluntary consent is an issue that this court has not addressed directly. Since *Carter* was decided, however, the Utah Supreme Court in *State v. Brown*, 853 P.2d 851, 855 (Utah 1992), cited with approval the preponderance of the evidence standard enunciated in *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In *Matlock*, the Supreme Court stated that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." 415 U.S. at 177–78 n. 14, 94 S.Ct. at 996 n. 14.

Although the result here would be the same regardless of the standard of proof applied by the trial court, we believe *Brown*'s approval of the preponderance of the evidence standard controls and that standard is appropriate for all cases dealing with voluntariness of consent.

## VI. CONCLUSION

The trial court did not err by denying Delaney's motion to suppress. The evidence supports the trial court's determination that reasonable suspicion existed to stop Delaney's vehicle for speeding, and that the stop was not an illegal pretext stop. Furthermore, Delaney's continued detention after the initial traffic stop was justified by Mangelson's detection of the odor of burnt marijuana. Finally, the trial court did not err when it determined that Delaney consented to a search of his vehicle and that he gave his consent voluntarily. We therefore affirm Delaney's conviction.

BILLINGS and GREENWOOD, JJ., concur.