IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, in the interest of C.P.B., a person under eighteen years of age. | ) ) ) ) | MEMORANDUM DECISION |
| _____ | ) | Case No. 20100901-CA |
| C.P.B., | ) ) | |
| Appellant, | ) ) | F I L E D (June 21, 2012) |
| v. | ) ) | 2012 UT App 174 |
| State of Utah, | ) ) | |
| Appellee. | ) | |

-----

Sixth District Juvenile, Kanab Department, 1021714
The Honorable Paul D. Lyman

Attorneys:     J. Bryan Jackson, Cedar City, for Appellant
              Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee

-----

Before Judges Voros, Davis, and Roth.

DAVIS, Judge:

¶1     C.P.B. (Appellant) appeals from a juvenile court adjudication for possession of a controlled substance, marijuana, which is a class B misdemeanor, *see* Utah Code Ann. § 58-37-8(2)(a)(i) (Supp. 2011); *id.* § 58-37-4(2)(a)(iii)(S) (listing marijuana as a controlled substance), arguing that her conviction was based on insufficient evidence. We agree and reverse Appellant's conviction.

¶2     Following a bench trial in 2010, Appellant was adjudicated of possessing marijuana "on or about October 01, 2008."[1] The evidence presented consisted of testimony from a police officer investigating the text message records of a convicted drug dealer, testimony from the dealer, a portion of the dealer's text messaging history, and a written statement completed by the dealer. The text message records indicate that on October 1, 2008, the dealer received a text message asking if he had "any bud." The written statement of the drug dealer admitted into evidence identifies Appellant as the individual associated with the phone number from which that text message was sent. The written statement indicates that the drug transaction did occur and clarifies that the transaction was for "weed." The dealer testified that "weed" meant marijuana, that he was acquainted with Appellant, and identified her in the courtroom. However, the dealer also testified that he did not recall completing the written statement or initialing the text message record next to the October 1, 2008 text message, and that he was not sure what his phone number was during the time frame in question. The State attempted to explain the dealer's unexpected memory lapse on the stand as a result of the backlash the dealer was experiencing in prison for being a "narc." The dealer blamed his memory lapse on the fact that he "was doing a lot of drugs" during the time frame in question. The officer then testified that the text message record was from the dealer's cell phone account and that he witnessed the dealer complete the written statement and initial the text message record. The State presented no other evidence except for the written statement to prove that the telephone number from which the October 1, 2008 text message was sent was associated with Appellant. Additionally, no marijuana was found in relation to these charges, and while the written statement indicates that a drug transaction took place following the October 1, 2008 text message, there is no evidence that it occurred "on or about October 01, 2008," or that Appellant was indeed the purchaser in that transaction.

¶3     Nevertheless, the juvenile court concluded that the State met its burden, noting that the dealer "knew who [Appellant] was, [and] that . . . although [the dealer] said he doesn't recall dealing drugs with her, he . . . did acknowledge that he filled out [the written statement, which] says a drug transaction did take place" and that it was for marijuana. Assuming, without deciding, that all of this evidence was properly

---

[1]Appellant was not charged until May 20, 2010, more than eighteen months after the alleged purchase.

admitted,[2] it is insufficient to show that Appellant ever possessed marijuana "on or about October 01, 2008."

¶4    "In a prosecution for unlawful possession of narcotics the [State] must prove that the accused exercised dominion and control over the drug with knowledge of its presence and narcotic character." *State v. Winters*, 16 Utah 2d 139, 396 P.2d 872, 874 (1964). *See generally* Utah Code Ann. § 58-37-8(2)(a)(i) (making it unlawful for "any person knowingly and intentionally to possess or use a controlled substance analog or a controlled substance, unless it was obtained under a valid prescription or order, directly from a practitioner while acting in the course of the person's professional practice, or as otherwise authorized by this chapter"). To challenge the sufficiency of the evidence supporting the adjudication, the appellant "must marshal all of the evidence in support of the trial court's findings of fact and then demonstrate that the evidence, including all reasonable inferences drawn therefrom, is insufficient to support the findings against an attack." *State v. Larsen*, 2000 UT App 106, ¶ 11, 999 P.2d 1252 (internal quotation marks omitted). We believe Appellant has satisfied this burden.[3] When we "review[] a bench

---

[2]Appellant challenges the juvenile court's decision to admit the text message record at trial, arguing that the evidence lacks the proper foundation and is hearsay. Appellant contends that the evidence does not clearly indicate whether the October 1, 2008 text message was sent from Appellant's phone, or whether Appellant was the person who actually wrote and sent that text message, as opposed to it having been sent by someone else using her cell phone, such as her then boyfriend, who happened to be the drug dealer's codefendant in the case that resulted in the drug dealer's incarceration. Because Appellant was not clearly identified as the sender of the text message, she argues that the text message record could not be admitted as an "[a]dmission by [a] party-opponent," *see* Utah R. Evid. 801(d)(2) (describing "an [o]pposing [p]arty's [s]tatement" as "not hearsay").

[3]The State also argues that Appellant inadequately briefed her arguments on appeal. While Appellant's appellate brief is not exactly a model of clarity or grammatical prowess, it is sufficient to satisfy the requirements of rule 24 of the Utah Rules of Appellate Procedure. *See* Utah R. App. P. 24(a)(9) (listing the components of a properly briefed appellate argument).

trial for sufficiency of evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *Id.* ¶ 10 (internal quotation marks omitted). "Additionally, in those instances in which the trial court's findings include inferences drawn from the evidence, we will not take issue with those inferences unless the logic upon which their extrapolation from the evidence is based is so flawed as to render the inference clearly erroneous." *State v. Briggs*, 2008 UT 75, ¶ 11, 197 P.3d 628 (internal quotation marks omitted).

¶5      We recognize that courts have upheld convictions for possession of a controlled substance in situations in which there was no direct evidence of the drugs at issue. *See, e.g., United States v. Baggett*, 890 F.2d 1095, 1097 (10th Cir. 1989) ("If the prosecution is not going to present direct evidence of drug possession, its circumstantial evidence must include some testimony linking defendant to an observed substance that a jury can infer to be a narcotic."); *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976) (determining that when the drug evidence or evidence from a chemical analysis of the drug at issue is not available, possession of a controlled substance can nonetheless be proven by circumstantial evidence, including "evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence"); *Provo City Corp. v. Spotts*, 861 P.2d 437, 442-43 (Utah Ct. App. 1993) (applying the test laid out in *Dolan* to uphold a conviction for possession in which there was no physical evidence of the drug at issue). However, those cases involved additional circumstantial evidence establishing possession beyond the type of evidence presented in this case. *Compare United States v. Sanchez DeFundora*, 893 F.2d 1173, 1176 (10th Cir. 1990) (determining that the evidence, including a witness's testimony that she had "sampled the alleged cocaine and . . . it affected her in the same way as cocaine had affected her in the past," and evidence that a portion of the substance was chemically tested, that the substance was successfully sold as cocaine, and that law enforcement had seized cocaine from the defendant in the past, was sufficient for the jury to infer that the substance at issue was cocaine), *Dolan*, 544 F.2d at 1222-23 (determining that

testimony from several witnesses that the defendant was present with them when they, as a group, purchased drugs on several occasions; testimony from one witness that he observed defendant behaving as though he was "'tripping,'" in accordance with the behavior expected of someone who had consumed some of the drugs they had purchased; and testimony that the defendant had injected heroin in conjunction with a purchase, constituted sufficient evidence upon which the jury could determine that the defendant possessed various controlled substances), *Spotts*, 861 P.2d at 442-43 (affirming a possession of marijuana conviction based on a police officer's testimony that she observed the defendant smoking what looked like a "joint" and smelled like marijuana; that the defendant appeared and acted as if he were under the influence of marijuana, having slowed speech and "very bloodshot" eyes; that "the incident was carried out with some degree of secrecy" by the defendant; and that the defendant acknowledged he had taken a few "'hits'"), *and Winters*, 396 P.2d at 873-75 (determining that defendant's admission that he was "addicted to dope" and had smuggled drugs in from Mexico "in his mouth"; the deputy sheriff's testimony that he overheard defendant telling the woman in the next jail cell, who was apparently the defendant's wife, that she had to "'get the stuff out of the mattress out of the bed behind the door' and flush it down the toilet before the officers [found] it"; and evidence that a vial containing heroin was found in the defendant's jail cell constituted sufficient evidence in support of the defendant's possession conviction), *with Baggett*, 890 F.2d at 1096 (determining that evidence that the defendant made "three telephone calls o[n] November 29 [that] make clear that she arranged for a purchase of a controlled substance on that day," and that "four months later, . . . [the defendant] confessed to two police officers" that she had used heroin during the time frame in question, was insufficient to prove that the defendant possessed a controlled substance on the particular day listed in the charging documents), *and State v. Ireland*, 2006 UT 17, ¶¶ 1, 22, 133 P.3d 396 (concluding that a conviction for "unlawful possession or use of a controlled substance" could not be "based exclusively on the fact that [the defendant] tested positive for the existence of methamphetamines in his bloodstream").

¶6    The State presented no such additional circumstantial evidence in this case. The evidence presented, even when viewed in the light most favorable to the juvenile court's findings, does not identify Appellant as having actually possessed marijuana ever, let alone "on or about October 01, 2008," as specifically alleged. *Cf. United States v. Hall*, 473 F.3d 1295, 1309 (10th Cir. 2007) (determining that evidence that the defendant "possessed crack-cocaine at some time" was insufficient to uphold a conviction for

possession when "the indictment charged [the defendant] with possession and distribution on or about April 7, 2001"); *Baggett*, 890 F.2d at 1096 (determining that "the Government must put forth some evidence to show that [the defendant] actually possessed heroin on the day in question" where the charges specify a particular date on which the defendant possessed heroin).  Appellant is tied to only one seemingly recanted statement that the text message sent on October 1, 2008, seeking to purchase marijuana originated from a cell phone number the drug dealer had at one point described as Appellant's number.  No evidence from the telephone service provider was submitted to confirm whether the text message was actually sent from Appellant's cell phone account or that she sent it.  Additionally, Appellant has not been placed at the scene of the drug transaction, no evidence indicates when the transaction actually occurred, and no marijuana was found or even observed, let alone admitted into evidence, in relation to this charge.  Indeed, the only evidence that the drug transaction actually took place is contained in the drug dealer's uncorroborated written statement.[4]

¶7     In *Provo City Corp. v. Spotts*, 861 P.2d 437 (Utah Ct. App. 1993), this court upheld a conviction for possession of marijuana based on a police officer's testimony that she saw the defendant take "hits" from a "joint"; that she smelled the "distinctive aroma" of marijuana; and that when she spoke with the defendant, he "acknowledged he had taken a few "'hits'" and he appeared to be under the influence of marijuana in that his eyes were bloodshot and his speech slowed.  *See id.* at 442-43.  We noted that the evidence in that case approached "the outer limit of what we would affirm for a possession case where the substance itself or chemical test data was not produced."  *Id.* at 443.  The evidence here is far less reliable, and the inferences far more attenuated than in *Spotts*, and while we recognize that the juvenile court's inferences should not be readily rejected on appeal, *see Briggs*, 2008 UT 75, ¶ 11, we also recognize that "caution must be taken that the conviction not be obtained by piling inference on inference," *see*

_____

[4]The dealer testified that it did not look like his signature on the written statement, that he could not remember whether he filled out that statement, and that although the statement and text message record were initialed with the letters that constitute his initials, he did not recall initialing them himself.  Thus, the juvenile court's finding that the dealer specifically acknowledged having completed the written statement is not supported by the evidence.  Rather, the evidence that he filled out the statement comes from the detective.

*United States v. Lazcano-Villalobos*, 175 F.3d 838, 843 (10th Cir. 1999) (internal quotation marks omitted). Accordingly, we reverse the juvenile court's ruling.[5]

_____

James Z. Davis, Judge

-----

¶8 I CONCUR IN THE RESULT:

_____

Stephen L. Roth, Judge

-----

Voros, Associate Presiding Judge (concurring in the result):

¶9 The brief of appellant, though poorly focused and nearly free of relevant legal authority, is nevertheless, in my judgment, minimally adequate to place C.P.B.'s sufficiency challenge before this court.

¶10 I do not believe that the majority opinion views the evidence in the light most favorable to the juvenile court's findings. But even so viewed, the evidence of drug possession in this case consisted of little more than four one-word answers filled in on a

---

[5]Because of the manner in which we resolve Appellant's insufficiency argument, we do not address the other arguments raised on appeal. *See generally State v. Carter*, 776 P.2d 886, 888 (Utah 1989) ("[An appellate c]ourt need not analyze and address in writing each and every argument, issue, or claim raised and properly before [it] on appeal.").

form designed for use at preliminary hearings. Under *Provo City Corp. v. Spotts*, 861 P.2d 437 (Utah Ct. App. 1993), and persuasive non-Utah case law, that is not enough.

_____

J. Frederic Voros Jr.,
Associate Presiding Judge