Argued and submitted February 27, reversed and remanded April 18, 1984

## STATE OF OREGON,
*Respondent,*

*v.*

## RICHARD BENJAMIN KING, JR.,
*Appellant.*

(82122811; CA A28777)

680 P2d 10

James E. McGehee, Stayton, argued the cause for appellant. With him on the brief was Larimer & McGehee, Stayton.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992(4), claiming that the evidence against him was discovered as the result of an illegal stop. ORS 131.615. We agree and reverse and remand.

There are two rest areas, one on each side of the Interstate 5 freeway, just north of where it crosses the Santiam River in Linn County. A one lane paved road goes under the freeway close to the river and connects the rest areas. It is thus possible for someone driving on I-5 to turn around by leaving the freeway at one rest area, taking the road to the other rest area and returning to the freeway in the opposite direction.

On the day in question, two sheriff's detectives in an unmarked car got off at the northbound rest area to return to Albany. As they drove on the connecting road, they saw two cars parked parallel to each other on the side of the road at a point where they could be seen from the freeway above but not from the main parts of the rest areas. One car was empty; two men were sitting in the front seat of the other.

The officers immediately suspected a drug transaction; they drove by the cars three times in order to get the license numbers. They then went to the southbound rest area and got on the freeway. As they crossed over the connecting road they saw defendant get out of the occupied car and walk to the empty car carrying a brown paper bag. The officers drove farther down the freeway, parked and waited until both cars passed them. They then followed defendant's car into Albany, where it stopped in a store parking lot.[1] They stopped defendant, asked for identification and the car registration, gave him *Miranda* warnings, obtained an admission that the sack contained marijuana and arrested him.

The state concedes that the encounter in Albany was a stop under ORS 131.615.[2] The issue is whether the officers

---

[1] The other car was also part of the procession into Albany; it continued on when defendant stopped.

[2] ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

had a reasonable suspicion that defendant had committed a crime. At the time of the stop, they knew that defendant and another man were parked in a somewhat secluded area which could be a good location for a drug transaction, that there had been instances of drug use in the rest areas, that defendant had gone from one car to another carrying a brown paper bag which could contain drugs and that defendant and the person in the other car had driven to Albany at the same time. The officers had called in defendant's license number but, as the result of computer problems, had not received a report. They also subjectively believed that they had witnessed a drug "buy."

The officers' information was inadequate to support "a belief that is reasonable under the totality of the circumstances existing at the time and place [the officer] acts * * *." ORS 131.605(4). The test is objective. *State v. Valdez,* 277 Or 621, 629, 561 P2d 1006 (1977). Although there had been incidents of drug use at the rest stops, the same could probably be said for many areas of the state; there is no evidence that the rest area was a common location for drug deals. The officers did not testify that they recognized either the cars or the people in them. For two men in their early twenties to park their cars next to each other and get in the front seat of one car in a somewhat secluded area, and for one of them in returning to his car to carry a brown paper bag with something in it, are not such inherently suspicious actions that an officer's subjective suspicion that the person has committed a crime can be held objectively reasonable. If it were, there will be few things beyond the totally mundane which a person could do without giving observing officers grounds for a stop. The court should have suppressed the evidence.

Reversed and remanded for a new trial.

---

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."