Argued and submitted April 30, reversed and remanded August 13, 2003

# STATE OF OREGON,
*Appellant,*

*v.*

# ROBIN BOND,
*Respondent.*

## 01C53143; A118471

74 P3d 1132

Kathleen Cegla, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Laura Frikert, Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## LINDER, J.

In this state's appeal, the state challenges the trial court's pretrial order suppressing evidence derived from what the trial court held to be an unlawful stop. Contrary to the trial court, we conclude that the officer who stopped defendant did so lawfully, because the officer reasonably suspected that defendant had committed a crime. We therefore reverse and remand.

The facts in this case, which the trial court found are as stated in the police report, are not disputed. Deputy Knutson, on patrol in Stayton at 12:30 a.m., noticed defendant's pickup truck parked in the parking lot of a golf course. A person appeared to be sitting in the driver's seat, and the truck's courtesy lights were on. Because she saw a lawnmower in the back of the truck, Knutson assumed that the truck belonged to an employee of the golf course. When Knutson saw the same truck in the parking lot 45 minutes later, with its courtesy lights still on, she stopped to investigate.

Knutson approached defendant's truck and attempted to make contact with defendant, knocking on his window "for quite some time. [Defendant] would open his eyes for a short time, and verbalize something inaudible." Knutson kept knocking and "request[ing] that [defendant] open his window," which he did "[a]fter a few minutes." When defendant opened his window, Knutson immediately noticed a strong odor of alcohol coming from inside the truck and saw that defendant's eyes were bloodshot. Knutson then told defendant that his courtesy lights were on, to which defendant responded, "Oh?"; he then "looked around the dash board area for some time, touching different areas of the dash before turning [the lights] off." Knutson also noticed that defendant's speech was slurred.

Knutson then asked defendant for his driver's license and proof of registration. According to Knutson,

"[defendant] thumbed through a rather large wallet for some time. I watched him pass over his driver[']s license at least 4 times. He then provided me with the license. I asked him why he had parked here, and he advised that he had

driven to his sister[']s house in Stayton, but she was not home. He said that he was tired, so he decided to park here, and get some rest. I asked where he had been before he went to his sister[']s house, and he said that he had been in the Lyons area. I asked him if he had consumed any alcohol earlier, and he said that he had drank [*sic*] 3 beers during the course of the day. I asked him how long he had been at this location, and he said that he did not know. I advised that I saw him here about an hour earlier, and then he said that he had been here about an hour."

At that point, Knutson asked defendant if he would be willing to take field sobriety tests (FSTs). After first asking if he had a choice and being advised, "Yes, you have a choice," defendant agreed. Defendant failed the tests, and Knutson arrested him for driving under the influence of intoxicants (DUII). ORS 813.010.

After Knutson arrested defendant and placed him in the back of her vehicle, defendant told Knutson that she could not arrest him for driving under the influence because she had not seen him driving and that, in fact, he had not been driving. He claimed, instead, that a friend had driven him to the parking lot and left him there. When Knutson asked defendant who his friend was, defendant answered that he did not know the person's name. When Knutson asked defendant why his friend drove him to the parking lot and left him there, defendant did not answer. Knutson took defendant to the jail, where an Intoxilyzer test indicated that he had a blood alcohol level of 0.13, well above the legal limit. *See* ORS 813.010(1)(a).

Defendant was charged with DUII. Before trial, he moved to suppress "any and all evidence/statements that followed a stop that was not made based on a warrant, probable cause or reasonable suspicion[.]" Specifically, he argued that Knutson stopped him when she knocked on his window repeatedly and that she did so without reasonable suspicion to believe that he had committed a crime. Alternatively, defendant argued that a stop occurred when Knutson asked him to perform field sobriety tests and that Knutson, at that point, may have reasonably suspected defendant of being intoxicated but had no reasonable basis to believe that he had been driving while in that condition. The trial court granted

defendant's motion. In doing so, the trial court rejected defendant's argument that a stop occurred when Knutson knocked on defendant's window repeatedly. The trial court agreed, however, that Knutson stopped defendant when she asked him to get out of his truck for the sobriety tests. It further agreed with defendant that, although Knutson had reasonable suspicion by then to believe that defendant was intoxicated, she lacked reasonable suspicion that defendant had driven while in that condition.[1]

On appeal, the state does not challenge the trial court's conclusion that Knutson stopped defendant when she asked him to perform the FSTs. It contends, however, that the trial court erred in concluding that Knutson lacked reasonable suspicion by then to believe that defendant had been driving his truck while in an intoxicated condition.

In response, defendant reasserts the arguments he made before the trial court. First, defendant urges that the trial court should be affirmed on an alternative ground—that Knutson stopped defendant when she knocked on his window, at which point she had no reasonable suspicion that he had committed DUII or any other crime. Failing that theory, defendant urges that the trial court correctly concluded that, at the point that Knutson asked defendant to perform the FSTs, Knutson reasonably could have suspected only that defendant was intoxicated, not that he had been driving while so intoxicated.

In light of defendant's proffered alternative ground for affirmance, we must answer two questions. First, did Knutson stop defendant by repeatedly knocking on his window to gain his attention? If the answer to that question is no, then did Knutson, who reasonably suspected defendant to be intoxicated at the point that she asked him to perform FSTs, also reasonably suspect that defendant had been driving in that condition? As we explain below, we agree with the trial court that Knutson did not stop defendant by knocking on his

---

[1] The trial court adhered to its ruling in response to the state's motion for reconsideration, and clarifying its view that, at the point of the stop, Knutson had only "reasonable speculation" and "not reasonable suspicion" that defendant had been driving while in an intoxicated state.

window. We disagree, however, that Knutson lacked reasonable suspicion that defendant had driven while in an intoxicated condition when she asked defendant to perform FSTs.

Not every intrusion or exercise of authority by a police officer is constitutionally significant. *State v. Gerrish*, 311 Or 506, 517, 815 P2d 1244 (1991). A person is "seized," and hence "stopped" for purposes of Article I, section 9, of the Oregon Constitution, only when he or she reasonably believes that the officer has "intentionally and significantly restrict[ed], interfere[d] with, or otherwise deprive[d]" the person of liberty or freedom of movement. *State v. Holmes*, 311 Or 400, 409, 813 P2d 28 (1991). An exercise of authority can convert an encounter into a seizure, but a police officer's request for information or for an individual to perform some action does not necessarily amount to a seizure. The key inquiry in determining whether an officer's conduct rises to the level of a seizure is whether the officer "engages in conduct significantly beyond that accepted in ordinary social intercourse"—that is, "whether the officer, even if making inquiries a private citizen would not, has otherwise conducted himself [or herself] in a manner that would be perceived as a nonoffensive contact if it had occurred between two ordinary citizens." *Id.* at 410.

If an encounter does amount to a seizure, the officer must have reasonable suspicion that the person seized (*i.e.*, stopped) has committed a crime. *Id.* at 407. Under Article I, section 9, whether the officer's belief in a given case is reasonable hinges on an "objective test of observable facts." *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993). In other words, the officer "must subjectively believe that the person stopped has committed a crime, and that belief must be objectively reasonable." *State v. Williams*, 178 Or App 52, 58, 35 P3d 1088 (2001) (citation omitted). The circumstances presented to the officer need not prove illegal activity conclusively, but they must support the reasonable inference that the person has committed a crime. *Ehly*, 317 Or at 80. The fact that there are possible lawful explanations for a person's behavior does not preclude reasonable suspicion. *State v. Crites*, 151 Or App 313, 316, 948 P2d 757 (1997), *rev den*, 327 Or 82

(1998). The analysis under the Fourth Amendment is effectively the same.[2]

■ Applying those principles here, we conclude that Knutson did not stop defendant—for purposes of either Article I, section 9, or the Fourth Amendment—when she knocked on his window. Although repeated requests by an officer to a person to do something could, under some circumstances, constitute an exercise of authority sufficient to cause a reasonable person to believe that he or she had been restrained, the facts surrounding Knutson's actions here compel a different conclusion. Knutson, by her own account, knocked on defendant's driver's side window "for quite some time." But her persistence must be considered in the context of defendant's unresponsiveness. Defendant never responded to her by expressing an unwillingness to talk to her. Indeed, defendant barely responded at all. He made only inaudible statements while apparently slipping in and out of consciousness. By then, Knutson was aware that defendant had been sitting in his parked vehicle, with its courtesy lights on, in the same place for more than 45 minutes, after midnight. Objectively, the circumstances were such that a reasonable person in defendant's place would perceive an officer as taking such action to inquire about the person's welfare. Thus, Knutson's conduct in knocking on defendant's window to rouse him was not a stop for constitutional purposes. *See State v. Blair/Vanis*, 171 Or App 162, 171-72, 14 P3d 660 (2000), *rev den*, 332 Or 137 (2001) (when a reasonable motorist would perceive an officer to be approaching him or her to inquire whether something is wrong or otherwise to check on his or her welfare, the officer's conduct does not amount to a stop, even if the motorist might consider the inquiry annoying or inconvenient). The trial court was correct in that regard.

■ The remaining question is whether Knutson reasonably suspected that defendant had been *driving* while intoxicated. The state does not challenge the trial court's ruling

---

[2] The Fourth Amendment reasonable suspicion inquiry dictates that, for a stop to be lawful, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 US 1, 21, 88 S Ct 1868, 20 L Ed 2d 889 (1968). As with the analysis under Article I, section 9, the officer's belief is measured against an objective standard. *Id.* at 21-22.

that defendant was stopped when he acceded to Knutson's request to perform FSTs and exited his vehicle. The only issue, then, is whether Knutson reasonably suspected defendant of having committed a crime at that point. We agree with the state that Knutson did.

There is no dispute that Knutson reasonably suspected that defendant was intoxicated: she smelled alcohol when defendant opened his window, defendant's eyes were bloodshot, his speech was slurred, he had difficulty locating the switch to turn off his courtesy lights, he passed over his driver's license four times, and he admitted that he had drunk three beers sometime during the course of the day. The trial court so found, and defendant effectively concedes as much.

■ Contrary to defendant's argument, however, Knutson also had reasonable suspicion that defendant had been driving while in that intoxicated state. Defendant was seated in the driver's seat of the truck when she approached; he was alone; he told Knutson that he had driven to his sister's house and that she wasn't home, so he stopped and parked to get some rest; and he told Knutson that he had been parked in the parking lot for about an hour. As noted, certainty is not required—all that is required is reasonable suspicion. Here, at the very least, a reasonable person could suspect from the circumstances that defendant drove his truck to the parking lot and that he was intoxicated at the time he did so.[3]

As defendant points out, his truck's engine was not running, as it was in several cases cited by the state in which an officer was held to have reasonable suspicion that a person had driven while intoxicated despite the fact that the officer did not see the person drive. *See, e.g., State v. Rhodes*, 315 Or 191, 199-200, 843 P2d 927 (1992); *State v. Ziebart*, 172 Or App 288, 290-91, 16 P3d 1212, *rev den*, 332 Or 326 (2001); *State v. Guerricagoitia*, 89 Or App 163, 165-66, 747 P2d 386

---

[3] The information that Knutson obtained after the arrest that indicated that defendant had not driven—specifically, defendant's statement to Knutson that a friend had driven him to the parking lot and left him there—is irrelevant in determining whether she had reasonable suspicion *at the time of the stop. See State v. Esplin*, 314 Or 296, 304, 839 P2d 211 (1992). In all events, a reasonable person would not have to believe that information, given defendant's unwillingness to provide any detail to support his story.

(1987), *rev den*, 305 Or 331 (1988). Although the fact that the cars' engines were running contributed to reasonable suspicion, those cases do not establish that a running motor is *necessary* to establish reasonable suspicion in any given case that a defendant drove while intoxicated. Instead, we look to the totality of the circumstances of each case to make that determination. ORS 131.605. Defendant's engine was not running when Knutson approached. But here, defendant made statements from which Knutson could reasonably infer that he had driven while intoxicated—a fact that was apparently absent in the above cases. Given the totality of the circumstances, Knutson's suspicion was reasonable.

In sum, defendant's statements, combined with the circumstances in which Knutson found defendant, provided reasonable suspicion that he drove while under the influence of intoxicants. The trial court erred in granting the motion to suppress.

Reversed and remanded.