Argued and submitted July 17, reversed and remanded November 13, 2003

# STATE OF OREGON,
*Appellant,*

*v.*

# MONTY KAPPEL,
*Respondent.*

## 81424; A118678

79 P3d 368

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Paula Johnson Lawrence argued the cause for respondent. With her on the brief was Lawrence & Lawrence, P.C.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

DEITS, C. J.

## DEITS, C. J.

In this criminal appeal, the state challenges the trial court's order suppressing evidence obtained after defendant was arrested for driving while under the influence of intoxicants (DUII), ORS 813.010. The trial court granted defendant's motion to suppress on the ground that, although the arresting officer had probable cause to believe that defendant was intoxicated, he lacked probable cause to believe that defendant had driven a vehicle while intoxicated. We agree with the state that the officer who arrested defendant had probable cause to believe that he had committed the crime of DUII. We therefore reverse the suppression order and remand for trial.

The facts in this case are not disputed. A person called 9-1-1 at approximately 9:30 p.m. to report that he saw someone drive into a ditch on a rural road in Yamhill County. The caller stated that it was possible that the driver of the car was drunk or perhaps had just made a wrong turn. The caller told the 9-1-1 operator that the vehicle was a midsize blue car, that the driver appeared to be a dark-complected male, and that the driver did not appear to be injured, but that the caller did not stop because it was dark outside and because "these roads [are] lonely out here." Deputy Geist was dispatched to the scene shortly after 10:00 p.m., and arrived at 10:14 p.m. Geist found defendant's car in a ditch by the side of the road, with no visible skidmarks leading into the ditch. The car's doors were locked and no one was inside or nearby. Deputy Brooker arrived soon thereafter, and the two officers ran a DMV check on the car that indicated that defendant and his wife were the registered owners of the vehicle and lived about one-half mile from the scene of the accident. The officers then went to defendant's house, where they contacted defendant's wife. She told them that defendant had left home in the car at 8:00 that evening after they had had an argument, and that he had not returned. The officers searched the house for defendant with his wife's consent but did not find defendant. They then left the house and returned to the car.

At 10:30 p.m., just before Geist and Brooker returned to the car, Deputy Ray found defendant sitting in

the driver's seat of the car, which was still in the ditch. Ray spoke to defendant and noticed the odor of alcohol. At that point, Geist arrived and approached defendant. He noted that defendant was a fair-complected male. Geist also immediately noticed several signs indicating that defendant was intoxicated—specifically, that his speech was slurred, his eyes were bloodshot and watery, and he smelled of alcohol. Geist asked defendant "how much he had had to drink that night," to which defendant responded, "No comment." Geist then asked defendant for identification. Defendant flipped through his wallet, passing over his driver's license several times. While defendant was looking for his license, Geist asked him for his car registration and proof of insurance, and, according to Geist, defendant "stopped looking for his driver's license and just kind of gazed up at me and then sat there for a while staring at me," until Geist reminded him that he needed to see defendant's license, which defendant then produced. Geist asked defendant if he could check his eyes to "make sure he was okay to be driving"; in response, defendant turned his head away and refused to look at Geist.

At that point, Geist believed that defendant was under the influence of intoxicants and had been driving in that condition. Consequently, he asked him to step out of the car. Defendant had difficulty getting out of the car, and, after he did, swayed in a circular motion while standing. Geist read defendant his *Miranda* rights and asked him to perform sobriety tests, which defendant refused. Geist then arrested defendant for DUII. *See* ORS 813.010.

Defendant was charged with DUII. Before trial, defendant moved to suppress "the detention and the arrest and all derivative evidence" on the ground that Geist lacked probable cause to arrest defendant for DUII. Specifically, defendant argued that Geist "was lacking two elements of the crime of DUII: driving and driving while intoxicated" and that "the officer had insufficient evidence that defendant was the person driving the vehicle at the time of the [9-1-1 caller's] observations and no evidence that defendant had consumed an intoxicant at the time of the observed driving." (Emphasis omitted.) In response, the state asserted that, given the totality of the circumstances and reasonable inferences to be drawn from those circumstances, it was more

probable than not that defendant had driven the car while he was intoxicated, and, thus, Geist had probable cause to arrest him.

The trial court concluded that, "at the time of defendant's arrest Deputy Geist had probable cause to believe that defendant was presently intoxicated," but that Geist "did not have probable cause to believe that defendant had been intoxicated *while driving*." (Emphasis in original.) Accordingly, the court granted defendant's motion to suppress. On appeal, the state assigns error to the trial court's granting of the motion to suppress.

Whether probable cause exists presents us with a question of law. *State v. Herbert*, 302 Or 237, 241, 729 P2d 547 (1986). Probable cause, as defined by statute, "means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11). Thus, probable cause does not require certainty, but it includes both an objective and a subjective component: the officer must hold a belief that the person in question has committed a crime, and that belief must be objectively reasonable under the circumstances. *State v. Dinsmore*, 182 Or App 505, 511, 49 P3d 830 (2002). In determining whether probable cause exists, we consider the totality of the circumstances presented to the officer and reasonable inferences that may be drawn from those circumstances; no single factor is dispositive. *State v. Spruill*, 151 Or App 87, 90-91, 948 P2d 726 (1997). The fact that there are possible lawful explanations for a person's behavior does not preclude the conclusion that there was probable cause. *See State v. Bond,* 189 Or App 198, 203, 74 P3d 1132 (2003) (so stating in context of reasonable suspicion analysis); *see also State v. Crites*, 151 Or App 313, 316, 948 P2d 757 (1997), *rev den,* 327 Or 82 (1998).

Defendant concedes that Geist subjectively believed, at the time of the arrest, that defendant had committed the crime of DUII. In addition, defendant agrees that Geist had probable cause to believe that he was intoxicated. Thus, the sole issue before us is whether, at the time that Geist arrested defendant for DUII, his subjective belief that defendant drove while in an intoxicated condition was objectively

reasonable. After considering the totality of the circumstances, we conclude that it was.

There is evidence to support Geist's belief that, more likely than not, defendant drove the car into the ditch. The car was registered to defendant and his wife, and defendant's wife reported that defendant had left in the car after the two had had an argument at 8:00 p.m., an hour and a half before the accident. In addition, the accident occurred approximately one-half mile from defendant's home. Finally, the car was locked when officers first approached it, but when they returned, defendant was sitting in the driver's seat, which indicated that he had the keys to the car. Although that evidence may not establish with absolute certainty that defendant drove the car into the ditch, based on the evidence in the record, it was a reasonable inference on the part of the officer that it was more likely than not that defendant was the driver—all that is required for probable cause. *See Herbert*, 302 Or at 241; *Dinsmore*, 182 Or App at 511.

There is also evidence supporting the officer's conclusion that it was more likely than not that defendant was under the influence of alcohol at the time of the accident. As noted above, the evidence establishes that defendant was intoxicated at the time that the officers first contacted him at 10:30 p.m. The evidence also showed that the car went into a ditch in a rural area. The nearest house was a quarter of a mile away. There were no obvious places where defendant could have gone to drink alcohol after the accident. Moreover, there were no skidmarks leading into the ditch to suggest that defendant lost control of his vehicle but tried to stop to avoid veering off the road; instead, it appears that the car was driven into the ditch without the brakes having been applied. Based on all of the above evidence, Geist's subjective belief that defendant drove the car into the ditch, and was intoxicated when he did so, was objectively reasonable.

Defendant argues that Geist's belief was not objectively reasonable because there were possible alternative explanations as to what occurred. For example, he could have left the car and walked to a nearby house and become intoxicated during the hour between the time of the accident and the time police found him in his car intoxicated. However,

although that scenario is a possible one, it is not a likely one, and, significantly, there was no evidence to support the conclusion that he did go somewhere else to drink. We have held that the existence of another possible lawful explanation does not preclude the conclusion that there was objective probable cause that a defendant has committed a crime. *See Bond*, 189 Or App at 203; *Crites*, 151 Or App at 316.

Defendant also points to evidence that he asserts precludes the conclusion that Geist had objective probable cause to believe that defendant committed the crime of DUII. First, defendant notes that the 9-1-1 caller indicated that the driver of the car that went into the ditch was dark-complected and that Geist stated that defendant had a fair complexion. Defendant argues that, based on that evidence, it was unreasonable for Geist to believe that defendant was driving the car at the time of the accident. However, the 9-1-1 caller saw the driver only while driving past him without stopping, he did not have any contact with the driver, and it was dark at the time—all factors that cast doubt on the accuracy of the caller's description. In any event, that evidence was not sufficiently persuasive to preclude the conclusion, based on the totality of the circumstances, that more likely than not defendant was driving the vehicle at the time of the accident.

Defendant also relies on the fact that an hour passed between the time that the 9-1-1 caller reported that the car went into the ditch and the time that the officers found defendant sitting in his car, a period during which he could have gone somewhere else to become intoxicated. Again, as discussed above, there is no evidence that defendant did go elsewhere to drink, and the evidence about the passage of time, in itself, is not highly persuasive and does not preclude the conclusion that, at the time of the arrest, Geist had probable cause to arrest defendant for DUII.

For all of the reasons above, Geist's belief that, more likely than not, defendant drove while intoxicated was objectively reasonable. The trial court erred in granting defendant's motion to suppress.

Reversed and remanded.