Argued and submitted January 29, affirmed July 15, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOHNNY KIRK BRIGGS,
*Defendant-Appellant.*

Lane County Circuit Court
210617468; A135119

212 P3d 1276

Rebecca A. Duncan, Chief Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Rosenblum, Judge, and Deits, Senior Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

Defendant appeals his conviction for felon in possession of a restricted weapon. He asserts that the trial court erred in denying his motion to suppress evidence on the grounds that his consent to the search that yielded the evidence was the product of an unlawful stop and the product of an unlawful threat to arrest him. We conclude that the police had a reasonable suspicion that defendant was engaged in criminal activity and, thus, that he was not unlawfully stopped. We further conclude that defendant's unlawful threat argument is unpreserved. We therefore affirm.

The relevant facts are not in dispute. On June 13, 2006, at 1:54 a.m., officers Clements and Rivera were on patrol in a neighborhood of Eugene that the officers identified as a high-crime area, specifically, for drugs, burglaries, and thefts from cars. Rivera observed a car parked in the traffic lane of a side street with its headlights off. Three bicyclists were stopped alongside it. Defendant was sitting in the driver's seat of the car. Rivera saw defendant put his hand out of the window of the car and give something to one of the bicyclists, but he could not see what it was. He told Clements, who was driving, that he suspected that defendant and the bicyclists were engaged in a drug transaction. Clements turned the patrol car around, and they drove back to where Rivera had seen defendant's car.

Clements turned off the patrol car's headlights in an attempt to approach defendant and the bicyclists unobserved. As they approached, the bicyclists left, two in one direction and the third in another. Rivera described their departure as "bicycles start[ing] to go in every which direction." Defendant also drove away, travelling toward the police car. As the cars neared each other, Clements turned his headlights back on to see how defendant and his passenger would react upon seeing the police. He did not notice any particular reaction. After the two cars passed each other, he looked back and saw that the registration stickers on the rear license plate of defendant's car were obscured by the license plate frame, a traffic violation. He activated his overhead lights and stopped defendant for the license plate violation.

While obtaining defendant's driver license and registration, Clements noticed items in the car that could be

used in stealing from other cars. Clements took defendant's documents back to the police car, where he learned that defendant's license was valid, that he had no outstanding warrants, and that he was on probation for a conviction for felon in possession of a firearm. Clements returned defendant's documents but did not tell him that he was free to leave. He informed defendant that he knew that he was on probation. Clements told him that there had been many "car clouts" and burglaries in the neighborhood and expressed concern about what defendant was doing there. He asked defendant if there were any weapons in his car. Defendant said that there were not.

Clements wanted to search the car for stolen property and drugs, so he asked defendant to consent to a search. Defendant refused. Clements then told defendant that he could call his probation officer if he continued to refuse to consent to a search. Defendant repeated his refusal, saying that he had been searched a number of times since being on probation and that he "just doesn't like it." Clements called the on-duty probation officer. Based on Clements' description of his and Rivera's observations, the probation officer believed that she had reasonable grounds to require defendant to consent to a search as a condition of his probation. She spoke with defendant, telling him that she had reasonable grounds to ask him to consent to a search, that it would be a violation of his probation to refuse, and that he could be arrested if he did not consent. Defendant then consented to the search.

Clements searched defendant and his car and found, among other things, a slung shot—a large padlock attached to a handle with a nylon strap—in the car. Clements arrested defendant for being a felon in possession of a restricted weapon.

Before trial, defendant moved to suppress the evidence obtained as a result of the search of his car on two grounds. First, he argued that his consent to the search was not valid because it was the product of an unlawful extension of the traffic stop. Second, he argued that he did not consent at all and instead merely acquiesced to police authority.

At the hearing on the motion to suppress, Clements testified that, in his experience, drug dealers "tend to be on bicycles a lot of times. They also are in vehicles dealing to

people on bicycles. It's not very uncommon to see." Clements testified that he believed that defendant and the bicyclists left the scene when they did because they saw the police car approaching, but, on cross-examination, he stated that he could not be certain that it was not merely a coincidence that they left then. He testified, however, that the conduct was consistent with his belief that a drug deal had just occurred and that he could recall "numerous" situations in which "we've rolled up on drug deals and everybody took off running."

The trial court denied defendant's motion, concluding that the officers had reasonable suspicion of drug activity and that defendant's consent was therefore not the product of an illegally extended stop. The court further concluded that defendant's consent was not mere acquiescence to police authority because he was presented with the "reasonable choice" of consenting to the search or being arrested for violating the conditions of his probation. Following a jury trial, defendant was convicted.

On appeal, defendant renews his argument that his consent was invalid because it was the product of an unlawful stop.[1] He also argues that his consent was invalid because it was the product of the probation officer's threat to have him arrested, which he contends was unlawful. We begin with the stop. Defendant contends that Clements and Rivera lacked reasonable suspicion that he was involved in criminal activity and thus lacked authority to extend the traffic stop beyond what was necessary to cite him for the license plate violation. He argues that, although the conduct and the circumstances that the police observed may have been consistent with drug dealing, they did not rise to the level of reasonable suspicion. In response, the state argues that the officers had reasonable suspicion of criminal activity and, thus, that the stop was lawful.

---

[1] In a single sentence at the end of his brief, defendant also asserts, as he did below, that he did not consent to the search but merely acquiesced to police authority. Defendant does not develop that assertion or offer any legal authority to support it. To the extent that defendant seeks to renew the argument that he made in the trial court, the argument is foreclosed by *State v. Davis*, 133 Or App 467, 475-76, 891 P2d 1373 (1995).

We review a trial court's denial of a motion to suppress for errors of law and are bound by its findings of fact where constitutionally sufficient evidence in the record supports those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). To justify a stop, a police officer must subjectively believe that the person stopped has committed a crime and that belief must be objectively reasonable under the totality of the circumstances. *State v. Kusaj*, 174 Or App 575, 578, 28 P3d 1182 (2001), *rev den*, 333 Or 400 (2002). Thus, to determine whether a stop was authorized, "we look to the objective facts known to the officer at the time of the stop." *State v. Chambers*, 69 Or App 681, 685, 687 P2d 805 (1984). "Of course, the significance of any of the facts may be enhanced by the officer's special knowledge of the way certain crimes, such as those involving narcotics, are committed * * *." *Id.* at 686.

In this case, the trial court found that the officers had a subjective belief that defendant was engaged in drug activity. The record supports that finding, and defendant does not challenge it. The court also concluded, and we agree, that the officers' suspicion was objectively reasonable. In arguing the contrary, defendant attempts to minimize the inferences of criminal activity that can be drawn from the facts of this case. He argues that there was nothing particularly suspicious about the location in which the officers saw him, about the bicyclists with whom he was seen interacting, or about the fact that he and the bicyclists all attempted to leave the scene just as the police approached. We disagree with defendant's view of the significance of those facts both individually and in the totality of the circumstances.

Because the reasonable suspicion determination turns on the totality of the circumstances, we largely confine our analysis to the significance of the facts when considered together. To the extent that defendant contends that the location and the conduct of the bicyclists are entitled to *no* weight in the reasonable suspicion calculus, we reject that contention without discussion. We pause only briefly to address the "stand-alone" significance of the timing of his and the bicyclists' departure from the scene. In support of his argument on that point, defendant relies heavily on the fact that Clements testified that he could not be certain whether

defendant and the bicyclists left because they had seen the police approaching and conceded that the departure could have been a coincidence.

Defendant's argument is not well taken. "The fact that there are possible lawful explanations for a person's behavior does not preclude reasonable suspicion." *State v. Bond*, 189 Or App 198, 203, 74 P3d 1132 (2003). Certainty about the significance of particular facts is not required for a police officer to hold a reasonable belief that they indicate criminal conduct. *Id.* at 205 ("[C]ertainty is not required * * *."). Thus, Clements's concession that the timing of the departure could have been a coincidence does not detract from the reasonableness of his belief.[2]

We turn to the totality of the circumstances. The facts of which the officers were aware when they stopped defendant included the following: At about 2:00 in the morning, defendant was parked with his headlights off in the traffic lane of a street in a neighborhood in which drug dealing was common. Defendant handed something to a person on a bicycle. When the police approached, the bicyclists departed in two different directions and defendant drove away. Those facts give rise to a reasonable inference that defendant had engaged in a drug transaction. Although there certainly may have been an innocent explanation for what occurred, the facts are not so innocuous as to preclude reasonable suspicion. We therefore conclude that the officers were authorized to stop defendant—regardless of the license plate violation—because they had reasonable suspicion that he was engaged in a drug transaction. It follows that defendant's consent to the search was not the product of an unlawful stop.

In support of his argument to the contrary, defendant relies on several of our prior cases, including *State v. Loud*, 149 Or App 250, 942 P2d 814, *rev den*, 326 Or 58 (1997), and *State v. King*, 67 Or App 749, 680 P2d 10 (1984). In *Loud*, two police officers conducted surveillance of a three-block area known for drug trafficking. During a two-hour

---

[2] To the extent that defendant's argument is meant to suggest that Clements did not subjectively believe that defendant and the bicyclists left because they saw the police approaching, that argument is also not well taken. The trial court implicitly found that Clements did hold that belief, and the record supports that finding.

period beginning around midnight, they watched a man pace on a street corner near a known "drug house," attempting to flag down passing cars, conduct that the officers associated with selling drugs. At about 1:45 in the morning, the defendant stopped his van near the man and honked his horn. The man approached and leaned into the open window for about a minute, after which the defendant drove away at a high rate of speed, committing several traffic infractions. We concluded that those facts alone did not establish reasonable suspicion that the defendant had engaged in a drug transaction. *Id.* at 254.

In *King*, the police saw two cars parked side by side in a secluded area of a freeway rest stop. 67 Or App at 751. One of the cars was unoccupied; two young men sat in the other. One of the men—the defendant—got out and walked to the other car carrying a paper bag. Both men then left. The police stopped the defendant and obtained an admission that the bag contained drugs. We concluded that the police lacked reasonable suspicion of a drug transaction. *Id.* at 752.

Those cases are distinguishable from this case on their facts. Unlike in this case, the police in *Loud* and *King* did not actually see an exchange of items or any conduct suggesting that an exchange had occurred. *Cf. State v. Martin*, 327 Or 17, 956 P2d 956 (1998) (inference that the defendant had engaged in a hand-to-hand transaction was reasonable when he put his hand into the window of a van for a few seconds and then immediately put it into his rear pants pocket as he walked away). Neither the suspicious location in either case nor, in *Loud*, the suspicious behavior of the man contacted by the defendant suggested that those defendants were engaged in criminal activity. *See State v. Bates*, 304 Or 519, 526, 747 P2d 991 (1987) (the objective facts must indicate that "*this* defendant is likely to be a criminal" (emphasis in original)). In this case, on the other hand, the time, the location, and the conduct of both defendant and the bicyclists suggested criminal activity. Accordingly, *Loud* and *King* do not undermine our conclusion that the stop in this case was supported by reasonable suspicion.[3]

---

[3] The other cases on which defendant relies indicate that reasonable suspicion does not arise merely because (1) a bicyclist approaches the driver's side of a car

■    We turn to defendant's argument that his consent was the product of an unlawful threat. As noted above, defendant contends that the probation officer's threat to arrest him if he did not consent to a search was unlawful. He argues that it was unlawful because the probation officer did not have reasonable grounds to request his consent to a search, as required by ORS 137.540(1)(i).[4]

We do not address that argument on the merits, because we conclude that it is unpreserved. At the suppression hearing, defendant argued that he did not actually consent to the search in response to his discussion with the probation officer. Rather, he argued, he merely acquiesced to her assertion of lawful authority to require him to submit to a search. The prosecutor responded that defendant made a voluntary choice between consenting and being arrested for a probation violation, adding, "Just because one of those choices involves jail doesn't necessarily invalidate the consent, so long as it's legal what he's being promised or threatened by law enforcement." The prosecutor also told the court that defendant was required to consent as a condition of his probation "so long as there [are] reasonable grounds."

Defendant contends that those statements by the prosecutor were sufficient to preserve the issue that he raises on appeal. We disagree. The prosecutor's arguments implied that the probation officer *did* have reasonable grounds to require defendant to consent and that the threat was therefore lawful. The trial court agreed with the prosecutor's argument and concluded that defendant was presented with a "reasonable choice." At no point did defendant argue that the probation officer did not have reasonable grounds to ask him

---

parked in a vacant parking lot, *see State v. Astorga*, 225 Or App 42, 44-45, 200 P3d 170 (2008); (2) a person looks surprised when the police approach and appears to hide something, even in an area known for criminal activity, *see State v. Moya*, 97 Or App 375, 377, 775 P2d 927 (1989); *State v. Butkovich*, 87 Or App 587, 743 P2d 752, *rev den*, 304 Or 548 (1987); or (3) a person turns and walks away upon seeing the police and then runs when the police pursue the person, *see State v. Penney*, 87 Or App 357, 361, 742 P2d 660 (1987). Those cases also do not undermine our conclusion that the totality of the circumstances in this case gave rise to reasonable suspicion.

    [4] ORS 137.540(1)(i) provides that, as a condition of probation, a probationer must "[c]onsent to the search of [his or her] person, vehicle or premises upon the request of a representative of the supervising officer if the supervising officer has reasonable grounds to believe that evidence of a violation will be found * * *."

to consent to a search or that her threat to arrest him was otherwise unlawful. Thus, the state did not have an opportunity to address that argument, and the trial court did not have an opportunity to consider it. We therefore decline to consider it on appeal. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (explaining the preservation requirement).

Affirmed.