AOYAGI, J.
*540 The police stopped defendant on suspicion of driving under the influence of intoxicants (DUII). In the course of the stop, defendant made incriminating statements, which led to his arrest and to the discovery of drugs and other evidence in his vehicle. Defendant was charged by indictment with delivery of methamphetamine, ORS 475.890, possession of methamphetamine, ORS 475.894, and possession of heroin, ORS 475.854. Before trial, he moved to suppress the evidence as the product of an unlawful stop. The state opposed the motion, conceding that defendant was stopped but arguing that the police officers had reasonable suspicion of DUII to justify the stop. The trial court denied the motion to suppress, and defendant was convicted on all three counts. Defendant appeals the resulting judgment, assigning error to the denial of his motion to suppress. We agree with defendant that the officers did not have reasonable suspicion at the time that they stopped him. Accordingly, we reverse and remand.
We review a trial court's denial of a motion to suppress for legal error. State v. Ehly , 317 Or. 66, 74-75, 854 P.2d 421 (1993). We are bound by the trial court's findings of historical fact that are supported by evidence in the record. State v. Holdorf , 355 Or. 812, 814, 333 P.3d 982 (2014). If the trial court does "not make findings on all pertinent historical facts, and there is evidence from which those facts could be decided more than one way, we will presume that the trial court found facts in a manner consistent with its ultimate conclusion." Id. (citation omitted).
*359 We state the facts in accordance with that standard.
On the day in question, a woman called the police to report that a yellow Mitsubishi had been parked in front of her house for two hours. A man was sitting in the driver's seat and had been intermittently sleeping, waving his arms, and talking to himself. The caller said that her husband had talked to the man and told her that the man "was definitely on something."
Corporal Gamble and Officer Hibbler arrived at the address. As they drove up, Gamble saw a yellow Mitsubishi convertible parked legally on the street. The top was down.
*541 Gamble could not see anyone inside the car. Based on the information relayed by dispatch, the officers were concerned that the driver might drive away when they approached, thereby committing DUII in a residential neighborhood, so they decided to "block in" the car to prevent that possibility. Gamble parked in front of the car, while Hibbler parked behind it, such that defendant was unable to leave. The state concedes that defendant was stopped at that point.
Gamble walked from his patrol car to defendant's car. He discovered that defendant was asleep and slumped over the center console. Gamble also saw that the key was in the ignition. Gamble reached in and removed the key. He then awakened defendant. Defendant appeared lethargic and dazed, his movements were exaggerated, his eyes were bulging, and he was fidgety. Based on his training as a drug-recognition evaluator, Gamble believed that it was "more likely than not that [defendant] was under the influence of something." He ran a warrants check and learned that defendant's license was suspended. Gamble asked defendant whether he had been driving, and defendant said that he had. At that point, Gamble spoke with the woman who had called the police, and she indicated that she had seen defendant arrive around the same time that she had gotten home, i.e. , about two hours before she had called the police.
The officers arrested defendant for DUII. In a search incident to arrest, they removed a plastic bag from defendant's pocket, which defendant identified as containing methamphetamine. A significant amount of evidence also was seized from defendant's car, including cash, several bags of crystalline substances, a digital gram scale, a glass smoking pipe with residue, a plastic bindle of suspected heroin, some pills and a pill bottle, and an iPhone.
Defendant was charged by indictment with delivery of methamphetamine, possession of methamphetamine, and possession of heroin. Before trial, he moved to suppress all of the evidence resulting from the stop. Defendant argued that the stop was a warrantless seizure unsupported by reasonable suspicion and thus violated Article I, section 9, of the Oregon Constitution. The trial court concluded that the stop *542 was lawful because the police had reasonable suspicion of DUII, specifically imminent future DUII, when they blocked in defendant's car:
"[T]he officers did have information from a named, known informant that the defendant was behind the wheel of a car under the influence of intoxicants, and even though the car was legally parked, there is reason to believe that he would drive off, so by blocking his car in and then approaching the car, they saw that the keys were there and that they did stop him or seize him within the legal meaning."
The court denied defendant's motion to suppress.
Defendant entered a conditional guilty plea, reserving the right to challenge the denial of the motion to suppress. He was convicted of all three counts and appeals the resulting judgment. Defendant's sole contention on appeal is that the trial court erred in denying his motion to suppress. He argues that, based on the minimal information known to the officers at the time of the stop-that is, when they blocked in his car-the officers lacked reasonable suspicion that defendant had committed DUII or was about to commit DUII. In response, the state does not contest that defendant was stopped as soon as the officers blocked in his car. See State v. Thacker , 264 Or. App. 150, 156, 331 P.3d 1036 (2014). The state argues, however, that the stop was lawful because the officers had objective reason to suspect both that *360 defendant was "intoxicated" and that he "had driven to that location or may be about to drive away."
An investigatory stop does not violate Article I, section 9, of the Oregon Constitution if it is supported by reasonable suspicion of a crime. State v. Ashbaugh , 349 Or. 297, 308-09, 244 P.3d 360 (2010). "For police officers to make a stop, they must reasonably suspect-based on specific and articulable facts-that the person committed a specific crime or type of crime or was about to commit a specific crime or type of crime." State v. Maciel-Figueroa , 361 Or. 163, 182, 389 P.3d 1121 (2017). That standard has both a subjective and an objective component, see id. at 182, 389 P.3d 1121, but defendant challenges only the objective component in this case.
*543 Whether reasonable suspicion exists depends on "the totality of the circumstances confronting a police officer." Holdorf , 355 Or. at 824, 333 P.3d 982 ; see also State v. Nichols , 269 Or. App. 429, 433, 345 P.3d 468 (2015) (rejecting defendant's attempts to pick apart and provide an innocent explanation for each individual fact). Importantly, those circumstances are adjudged at the time of the stop. Holdorf , 355 Or. at 824, 333 P.3d 982 ; see also ORS 131.605(6) (reasonable suspicion must arise from the circumstances "existing at the time and place that the peace officer acts"). "Evidence acquired after a stop cannot be used to establish or negate reasonable suspicion for a stop." State v. Ellis , 252 Or. App. 382, 389, 287 P.3d 1215 (2012) (emphasis in original).
In this case, the only information known to the officers at the time of the stop was that defendant was parked legally on a public street, had been parked there for at least two hours, and had been sleeping on and off in the driver's seat and intermittently waving his arms and talking to himself; that the caller's husband contacted defendant and perceived that he "was definitely on something"; and that defendant was not visible in the car when the officers arrived. After stopping defendant, the officers obtained additional information-they saw the car key in the ignition, personally observed defendant's demeanor, and learned that the caller had seen defendant drive up and park two hours before she called the police-but that later-acquired information cannot be considered in assessing whether the officers had reasonable suspicion when they stopped defendant. Id.
Based on the circumstances known to the officers at the time of the stop, we conclude that the officers lacked reasonable suspicion to stop defendant for DUII. Even assuming that the caller's husband's report that defendant was "on something" was reliable,[1] the officers did not know how long defendant had been in the car, except that it was at least two hours. They did not know how he had gotten there; for example, whether he had arrived on foot and gotten into *544 the car, or whether he had arrived by car and stayed in the car. If he was intoxicated by a narcotic of some kind, as the caller's husband perceived, they did not know whether he had taken it before he drove the car (if he drove the car) or whether he had taken it during the extended time that he had been sitting in the car.
It is certainly possible that any intoxicated person sitting in a parked car might have driven intoxicated to that location. However, for an officer to have objective reasonable suspicion that someone has committed DUII, the totality of the circumstances must support a reasonable suspicion that defendant has in fact driven while intoxicated. For example, in State v. Rhodes , 315 Or. 191, 199-200, 843 P.2d 927 (1992), the defendant was slumped over his steering wheel late at night, the motor was running, the interior lights were on, and the car was "oddly" parked. In State v. Ziebart , 172 Or. App. 288, 16 P.3d 1212 (2001), the defendant was standing on the side of a road, next to a running motorcycle, wearing motorcycle attire, and smelled of alcohol.
In State v. Bond , 189 Or. App. 198, 74 P.3d 1132 (2003), rev. den. , *361 336 Or. 376, 84 P.3d 1080 (2004), which both parties cite, an officer saw a pickup truck parked in the parking lot of a golf course in Stayton after midnight. The truck's courtesy lights were on, and a person appeared to be sitting in the driver's seat. When the officer returned 45 minutes later, the truck was still there, and the courtesy lights were still on. The officer approached the truck, knocked on the window, and requested to talk to the defendant. The ensuing interaction provided numerous indications that the defendant was drunk. When asked why he was parked there, the defendant stated that he had been in Lyons earlier, had driven to his sister's house in Stayton but she was not home, and was tired so he decided to park. The defendant admitted to drinking three beers during the course of the day. He also told the officer that he had arrived an hour earlier. At that point, the officer stopped the defendant and performed field sobriety tests, which he failed. Id. at 200-01, 74 P.3d 1132.
The defendant moved to suppress the evidence from the stop. The trial court denied the motion, and we affirmed on appeal. We emphasized that, by the time of the stop, the *545 officer had reason to believe that defendant was intoxicated from drinking alcohol and, importantly, had driven to the location an hour earlier. Id. at 205, 74 P.3d 1132 ; see also, e.g. , State v. Jones , 245 Or. App. 186, 263 P.3d 344 (2011) (officer had reasonable suspicion of driving-while-suspended where the defendant was parked in front of a bar, admitted to driving to the bar, and provided an inmate identification card instead of a driver's license). In the instant case, unlike Bond , the officers had no information as to when defendant had last driven. And, unlike Rhodes and Ziebart , the circumstances themselves did not suggest that defendant had driven recently or had been intoxicated when he parked.
As for whether the officers had reasonable suspicion that defendant was about to commit DUII, which was the express basis on which the trial court denied the motion to suppress, nothing about the circumstances here suggested that defendant was about to drive away. To the contrary, the officers knew that defendant had been sitting in the car for at least two hours, had been sleeping on and off, and had remained parked after the caller's husband approached him. There was no evidence that the motor was running. The officers did not know when they initiated the stop that the key was in the ignition. When they arrived, the officers did not even see defendant in the car-a convertible with its top down-suggesting either that he was no longer in the car, was asleep, or, at a minimum, was not in a position to immediately drive away. Although the officers' desire to ensure that defendant could not drive away is understandable, the circumstances, objectively, did not give rise to reasonable suspicion that he was about to drive away.
Had the officers approached defendant and talked to him before stopping him, the outcome of this case might well be different. As it is, we conclude that the officers lacked reasonable suspicion to stop defendant for DUII based on the circumstances known to them at the time of the stop.
Reversed and remanded.

See State v. Villegas-Varela , 132 Or. App. 112, 115, 887 P.2d 809 (1994) (concerning when a citizen informant's report has sufficient indicia of reliability to give rise to reasonable suspicion on the part of a police officer).